UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLIAM REX HOSKINS, | § | |
| | § | |
| Appellant, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-419 |
| | § | |
| HAZEL HOSKINS, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

On December 17, 2013, United States Bankruptcy Judge Richard S. Schmidt issued his "Memorandum Opinion and Order on Emergency Motion to Enforce Permanent Injunction" (Enforcement Order, D.E. 3-37).[1] The Bankruptcy Court held that William "Rex" Hoskins (Rex) is subject to a prior order imposing a permanent injunction requiring him to seek Bankruptcy Court approval before filing suit against Hazel Hoskins (Hazel) for matters related to her handling of the estate of her late husband, Lee Roy "Cowboy" Hoskins, Sr. (Cowboy). The Bankruptcy Court dismissed any complaint by Rex based on matters subject to the prior settlement, and granted Rex relief from the injunction to proceed with the remaining claims in a Live Oak County court.

Rex appeals in Cause No. 13-cv-419, objecting to the Bankruptcy Court's exercise of personal jurisdiction over him and the application of the permanent injunction. Hazel cross-appeals in Cause No. 14-cv-024, complaining that the Bankruptcy Court did not order Rex to submit his claims against her to a mediator or arbitrator. Both have

---

[1]   While there are two cause numbers assigned to these appeals, the record has been filed in 13-cv-419 and by this Order both appeals are consolidated into that cause number. References to "D.E." are to docket entries in 13-cv-419 unless otherwise noted.

requested oral argument.  The Court ORDERS the appeals consolidated into lead case 13-cv-419, DENIES oral argument and, for the reasons set out below, MODIFIES the Bankruptcy Court's Order, and AFFIRMS the Order as modified.  Costs are awarded against the party incurring same.

## FACTS

### A.  The Parties, the Dispute, and the Resolution

The relevant facts are undisputed.  Cowboy died in 1985.  He was survived by his wife, Hazel; their three sons, Lee Roy Hoskins, Jr. (Lee Roy), Colonel Clifton Hoskins (Clifton), and Leonard K. Hoskins (Leonard); and grandchildren, including Rex, who is a son of Leonard.  Cowboy left an estate that included at least two family companies (Southwest Ranching, Inc. and Hoskins, Inc.), numerous assets, and substantial liabilities.  Hazel was appointed executrix of Cowboy's will, as well as trustee of two testamentary trusts:  the Residuary Trust and the Marital Deduction Trust.

In the ensuing years, discord mounted among the family members and their businesses, resulting in a voluntary Chapter 11 bankruptcy proceeding for Southwest Ranching and two lawsuits involving the two family companies, Hazel, and two of her sons, Lee Roy and Clifton.  The two lawsuits became adversary proceedings, removed to the Bankruptcy Court in connection with the Southwest Ranching bankruptcy case.  In 2002, a global settlement was reached.  In simple terms, Lee Roy would take Southwest Ranching and certain other assets, Hoskins, Inc. would take certain assets, and each of the parties would disclaim any interest in the assets held by or transferred to the others.  All claims by and between the parties were to be released.

The settlement was effectuated by two documents:  (1) a Settlement Agreement (D.E. 3-21, pp. 2-9), which memorialized the basic terms and was signed in 2002; and (2) a Mutual Release and Indemnity Agreement (Mutual Release) (D.E. 3-8), which incorporated by reference the Settlement Agreement and was signed in 2003 after an attorney *ad litem* report verified that the agreement was fair to Cowboy's minor and unborn grandchildren.  Rex, who was an adult grandchild at the time, signed both documents as "approved and agreed to."

**B. The Varying Terms of the Agreements, Settlement Motion, Settlement Approval Order, and Judgment**

To effectuate the settlement, Southwest Ranching filed a Motion of Debtor Southwest Ranching, Inc., to Settle and Compromise Controversy and for Entry of Agreed Judgment (Settlement Motion) (D.E. 3-9).  This motion was not signed by, or served on, Rex.  It requested approval of the settlement and identified the parties in various ways:

(1) "Actual Parties" were defined as the parties to the adversary proceedings: Southwest Ranching, Debtor; Hoskins, Inc.; Hazel (individually, as executrix, and as trustee for both trusts); Clifton; and Lee Roy.  D.E. 3-9, p. 3.[2]

(2) "Settling Parties" included:  the wife and children of Lee Roy; the wife and children of Clifton; the wife and children of Leonard, which includes Rex; L.R. Hoskins and Sons, Inc.; and Hoskins Petroleum, Inc.

---

[2]  Leonard is identified as an "interested party" on the first page of the motion in the introductory paragraph and he signed the Settlement Agreement, but he is not listed in the body of the document as either an "Actual Party" or "Settling Party."  *Id.*, pp. 3-4.

(3) The term "Parties" was defined as Actual Parties and Settling Parties, collectively.  *Id.*, p. 4.

According to the Settlement Motion, the "Parties" moved for the Bankruptcy Court to issue a permanent injunction requiring them to obtain the Bankruptcy Court's approval prior to initiating new litigation regarding the administration or distribution of Cowboy's estate, among other things.

The reference to "Parties" includes Rex, who is a child of Leonard and a "Settling Party."  Rex did not expressly agree to any permanent injunction against new lawsuits without Bankruptcy Court approval.  However, the Settlement Agreement contemplates submission of the settlement to the Bankruptcy Court for approval in the Southwestern Ranching Chapter 11.  D.E. 3-21, p. 6.  The Bankruptcy Court's subject matter jurisdiction has not been questioned.  The Order Authorizing Compromise of Controversy Between Southwest Ranching, Inc., Hoskins, Inc., Hazel Hoskins, Lee Roy Hoskins, Jr., Colonel Clifton Hoskins and Others (Settlement Approval Order) (D.E. 3-10) recites that "notice of the Motion is proper and sufficient for all purposes under the Bankruptcy Code, the Bankruptcy Rules, and the Local Court Rules."  D.E. 3-10, p.2.  The Settlement Agreement requires that any disputes regarding its interpretation and/or performance be subject to a phone conference with the mediator, followed by mediation and then arbitration, if not resolved.  D.E. 3-21, pp. 7-8.  This provision is not reiterated in the Settlement Approval Order, the Judgment, or the Mutual Release.

### C. Current Litigation

In 2008, Rex's father, Leonard, filed suit against Hazel without first obtaining Bankruptcy Court approval.  When reminded of the requirement, Leonard nonsuited the litigation and sought approval from the Court to litigate, which was denied.  The dispute between Leonard and Hazel was ordered to arbitration.   The arbitrator appointed a receiver and permitted the receiver to file suit in Live Oak County.

Rex's suit against Hazel followed.  Rex argues that the injunction against new suits does apply to him because he was not a party to the bankruptcy case.  He also claims that he is not subject to the arbitration requirement.  The Bankruptcy Court held that it had personal jurisdiction over Rex and his lawsuit as a result of the Settlement Approval Order and resulting Judgment.  The Bankruptcy Court dismissed Rex's claims regarding settled matters, but granted Rex leave to continue his litigation in the Live Oak County court.  The Bankruptcy Court noted that Leonard's claims, being asserted through a receiver appointed by the arbitrator, were proceeding in the Live Oak County court, making it a matter of judicial economy to dispose of both sets of claims in that court.

In this appeal, Rex objects to the Bankruptcy Court exercising personal jurisdiction over him with respect to the permanent injunction that he did not agree to and which resulted from a motion that he did not join and was not served with, thus having no notice and opportunity to oppose.  Hazel objects because the Bankruptcy Court did not order Rex's claims to arbitration as it ordered Leonard's claims.

**DISCUSSION**

**A. Rex Hoskins is Bound By the Settlement Approval Order and Judgment Imposing a Permanent Injunction.**

**1. The Bankruptcy Court Properly Exercised Personal Jurisdiction**

In Issue 1, Rex asserts that the Bankruptcy Court could not enforce the permanent injunction against him due to a lack of personal jurisdiction over him.  He argues that he was never joined as a party and was not bound by the Settlement Agreement or Mutual Release.  Rex was never formally summoned to appear.  The issue is whether his participation in the Settlement Agreement was a voluntary act, sufficient to confer personal jurisdiction.

While Rex denies being bound by the terms of the Settlement Agreement, he does not deny signing it.  *See* Affidavit of William Rex Hoskins, D.E. 3-21, pp. 27-29.  Rex challenges the legal significance of the Settlement Agreement and the capacity in which he signed it, but does not deny the timing or authenticity of his signature.  D.E. 3-17, pp. 10-11; D.E. 3-19, pp. 10-11.  The only evidence of record is that Rex signed the Settlement Agreement and it was attached to the Settlement Motion seeking approval to settle.  D.E. 3-9, p. 4; D.E. 3-21, pp. 2-9.

The Settlement Agreement states that it is a "Rule 11" agreement (referencing the Texas Rules of Civil Procedure) and that it is not a comprehensive settlement agreement.  Rather, additional documents will expand its terms and finalize the settlement.  D.E. 3-21, p. 7.  While the parties dispute the legal significance of both the language of the

agreement and Rex's signature appearing under the heading "approved and agreed to," it is Rex's participation in the Settlement Agreement that constitutes a waiver of his objection to personal jurisdiction.

There is no question that Rex signed the Settlement Agreement, accepting notice of its contents that affected pending litigation. It bears the caption for the legal proceedings and sets out in detail the lawsuits to be disposed of by the settlement. The Settlement Agreement contemplates that the settlement, when approved by the Bankruptcy Court, will become part of a final judgment resolving all of the claims in litigation.

Rex asserts that he did not submit to the jurisdiction of the Bankruptcy Court because he was not defined as a "party" in the Settlement Agreement sufficient to be deemed a "party" to the litigation. Rex's interpretation of the Settlement Agreement fails to take into consideration a number of phrases that operate to include him among the parties for purposes of having the Bankruptcy Court act to effectuate the settlement. For instance:

- SWR, Cliff, Lee Roy, Hazel, Hoskins, Inc., (*and any other necessary parties) will join in, consent and agree to the filing and presentation to the Court of any required motion(s) and order(s)* in order to obtain the dismissal of SWR's pending bankruptcy proceeding, including the adversary proceedings. D.E. 3-21, p. 3 (emphasis added).
- The settlement will be binding upon and will inure to the benefit of Cliff, Hazel, Lee Roy, SWR and Hoskins, Inc., *and their respective agents, representatives, heirs, legal representatives, successors, assigns and entities in which any of the parties have or claim any ownership, right, title or interest. Id.*, p. 6 (emphasis added).

- This agreement contemplates that Leonard K. Hoskins will sign this agreement *as a party* and agree to all of the essential terms, conditions, and obligations hereof . . . . *Id*., p. 7 (emphasis added).
- The parties, their spouses *and children shall execute all documents necessary* to effectuate and close the settlement. *Id*. (emphasis added).

Under these circumstances, Rex's signature on the Settlement Agreement constitutes an appearance in the litigation involving the claims that were subject to the settlement. The appearance was made so the Bankruptcy Court would exercise its jurisdiction to approve the settlement.

It is well-settled that an objection to personal jurisdiction, as an individual right, is subject to waiver. *See, Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982). "Once that right is waived, a party that has voluntarily submitted to the jurisdiction of a court cannot subsequently object to that court's exercise of jurisdiction on due process grounds." [3] *Patin v. Thoroughbred Power Boats Inc*., 294 F.3d 640, 655 n.20 (5th Cir. 2002).

While never summoned to submit to the Bankruptcy Court's personal jurisdiction, Rex's participated in the case by signing the Settlement Agreement in 2002 and waived his objection to personal jurisdiction. The Court OVERRULES Rex's Issue 1.

### 2. The Bankruptcy Court Properly Enforced the Permanent Injunction

In Issue 2, Rex argues that he was not bound by the permanent injunction because that particular term was not included in the Settlement Agreement or Mutual Release and

---

[3]  Even if Rex were not considered to have participated in the case, a court that issues injunctive relief with respect to a matter within its jurisdiction may enforce that relief against a non-party. *See generally*, FED. R. CIV. P. 65, 71.

because he was not given notice of the Settlement Motion in which the issue first appeared.   Ordinarily, injunctive relief is to be granted only after notice and an opportunity to be heard.  Fed. R. Civ. P. 5(a), 65.  The record reflects that injunctive relief was not expressly authorized by the Settlement Agreement and that Rex was not served with a copy of the Settlement Motion.

The Settlement Motion seeking approval of the settlement and injunctive relief represented to the Bankruptcy Court that it was filed by the "Parties," which included Rex.   This was consistent with the Settlement Agreement's representation that all participants would join in all motions and other documents necessary to effectuate the settlement.   D.E. 3-9, pp. 3-5.   Rex appeared in the bankruptcy litigation through the Settlement Motion and the Settlement Agreement. Once a person appears in litigation, it is that person's duty to monitor the proceedings and assert his rights.  *See Pryor v. United States Postal Service*, 769 F.2d 281, 287 (5th Cir. 1985) (citing *Wilson v. Atwood Group*, 725 F.2d 255, 257, 258 (5th Cir.) (*en banc*), *cert. dism'd*, 468 U.S. 1222 (1984)).   A party waives the notice requirement when he fails to object based on insufficient notice and fails to assert prejudice.  *E.g., Shur-Value Stamps, Inc. v. Phillips Petroleum Co*., 50 F.3d 592, 595 (8th Cir. 1995).   Rex submitted to the jurisdiction of the Bankruptcy Court and had waived any objection regarding insufficient notice.

To the extent Rex argues that the alleged lack of notice violates constitutional guarantees, those arguments are waived because he failed to raise them with the Bankruptcy Court before the judgment imposing the injunctive relief became final.  *See e.g.*, *Countrywide Home Loans Inc. v. Jeffries*, No. 05–1753, 175 Fed. App'x 85, 87,

2006 WL 895867, *1 (7th Cir. April 7, 2006) (citing *King v. Ill. State Bd. of Elections*, 410 F.3d 404, 424 (7th Cir. 2005)).  The judgment was issued October 18, 2002.  D.E. 3-5.  Once the judgment became final, Rex's complaints were extinguished.  *See* FED. R. CIV. P. 77(d); FED. R. APP. P. 4.  *See also, In re Bradshaw*, 283 B.R. 814, 817 (B.A.P. 1st Cir. 2002).

In challenging the application of the injunction to him, Rex raised three issues:  (1) he had no notice and opportunity to be heard on the request for injunctive relief; (2) he cannot be deemed to have had sufficient notice through legal identification with another party; and (3) the injunction violated the Anti-Injunction Act.  Because of the Court's ruling that Rex was subject to the Bankruptcy Court's in personam jurisdiction and waived his complaint regarding lack of notice, the Court need not reach the "legal identification" issue.

Because Rex raises the issue of the Anti-Injunction Act for the first time in this appeal, it is waived.  "Arguments not raised with the bankruptcy court cannot be pursued in an appeal of a bankruptcy court's order."  *MaddenSewell, LLP v. Mandel*, 498 B.R. 727, 729 (E.D. Tex. 2013) (citing *Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993)).  The argument is also an impermissible collateral attack on the prior judgment.  *See generally, In re Davis Offshore, L.P.*, 644 F.3d 259, 262 (5th Cir. 2011).

The Court OVERRULES Rex's Issue 2.  The Bankruptcy Court's determination that Rex is bound by the prior judgment and its permanent injunction is AFFIRMED.

### 3. Whether Rex Is Bound By the Settlement Agreement and Mutual Release.

Third, Rex argues that the Bankruptcy Court erred in holding that he was bound by the terms of the Settlement Agreement and Mutual Release. While the Bankruptcy Court held that Rex was bound by the agreements he signed under the language "approved and agreed to," the only matter enforced against Rex is the permanent injunction, which is found only in the Bankruptcy Court's previous Settlement Approval Order and Judgment. The Bankruptcy Court stated: "Those agreements *and order of this Court* bound Hazel, her sons, their wives, and their children . . . and *enjoined them* from filing suit against her related to her deceased husband's estate." D.E. 3-37, p. 2 (emphasis added).

It was appropriate, as set out above, that Rex was held to the consequences of having signed the Settlement Agreement for purposes of determining in personam jurisdiction only. When the Bankruptcy Court states that there is no question that Rex is "bound by the Settlement Agreement and the Mutual Release and Indemnity Agreement," the statement is made in the context of there being no dispute that Rex signed the agreements and, as made clear by the following paragraph, that signature supports personal jurisdiction for the imposition—*in the Order*—of the permanent injunction. D.E. 3-37, p. 5.

The Bankruptcy Court did not adjudicate any dispute regarding the enforcement of the Settlement Agreement or Mutual Release, given that neither contained any injunctive language. Thus the Bankruptcy Court did not enforce the terms of the two agreements

against Rex.  To the extent that the Bankruptcy Court's language is overbroad, the Court SUSTAINS Issue 3.  The Court MODIFIES the Bankruptcy Court's Order (D.E. 3-37) to reflect that the Order finds Rex bound only for purposes of in personam jurisdiction and that no opinion regarding the enforceability of the Settlement Agreement or Mutual Release is intended.  This is consistent with the Bankruptcy Court's closing statement that the state court is empowered to interpret the parties' agreements.

### B. Hazel Hoskins Is Not Entitled to An Order Referring the Dispute to Arbitration.

In a single cross-issue, Hazel complains that the Bankruptcy Court erred in failing to order Rex to submit his claims against her to arbitration.  Rex defends the cross-appeal, raising two procedural complaints:  (1) Hazel's brief was not timely; and (2) her cross-appeal was filed in the wrong action.  The Court OVERRULES both procedural complaints.

Rex's appeal was docketed in Cause No. 13-cv-419, and he timely filed his Appellant's Brief on February 28, 2014, which was 14 days after the record was filed and the appeal was docketed.  FED. R. BANKR. P. 8007(b), 8009(a)(1); D.E. 4, 5.  Hazel's appeal, denominated a "cross appeal", was docketed in Cause No. 14-cv-024 on February 27, 2014.  14-cv-024 D.E. 3-1, 4.  However, she properly filed her opening brief as a brief on cross-appeal in 13-cv-419 pursuant to Fed. R. Bankr. P. 8009(a)(2) on March 14, 2014, the 14th day after the date Rex filed his Appellant's Brief.  "If the appellee has filed a cross appeal, the brief of the appellee *shall* contain the issues and argument pertinent to the cross appeal, denominated as such, and the response to the brief of the appellant."  *Id*.

(emphasis added).  The Court finds that Hazel's brief was timely and filed in the proper action under Rule 8009.

Hazel's requests for relief in the Bankruptcy Court did not seek referral to arbitration.  Emergency Motion to Reopen Case, D.E. 3-15 (requesting that the adversary proceeding be reopened in order to file a motion to enforce permanent injunction); Emergency Motion to Enforce Permanent Injunction, D.E. 3-6/3-7 (requesting an order requiring Rex to nonsuit his claim against Hazel).  At the hearing on the matter, Hazel did not request the Bankruptcy Court to order arbitration.  D.E. 3-39.  In fact, counsel for Rex stated, without any controverting argument, "I believe, your Honor, that that [complaint regarding Hazel's duty to account] is an issue to be determined by the Live Oak court, with all due respect.  Whether or not we have waived claims, whether we have settled claims, *whether we are bound by arbitration*, that's to be decided in Live Oak County." D.E. 3-39, p. 64 (emphasis added).

The Bankruptcy Court noted that the arbitration requirement is in the Settlement Agreement, not in the injunction.  D.E. 3-39, p. 46, 54, 56.  The injunction, as set out in the Bankruptcy Court's October 18, 2002 Judgment, reads:

> The Parties, and each of them, are enjoined from:
>
> > (a) instigation or continuation of any litigation by the Parties against any of the other Parties; or
> >
> > (b) the bringing of any lawsuit against any of the other Parties or the accountants, financial advisors and attorneys of any of the Parties

without first making application to this court for authority to bring any suit and obtaining an order of this court authorizing the filing of any such suit on any subjects pertaining to the subject matter of this litigation *viz* any suit concerning the conduct of this litigation, any suit pertaining to the administration or distribution of the estate of Lee Roy Hoskins, Sr., deceased, or the acts or failure to act concerning the administration or distributions under the Residual Trust or the Marital Deduction Trust, or any other trust provided for under the terms of the probated will of Lee Roy Hoskins, Sr., deceased, together with any related issues of disproportionate distributions, conspiracy, accountings, negligence, fraud, actions taken or failures to act, or any other means or manner of putting into question the settlement of the estate of Lee Roy Hoskins, Sr. and/or Hazel Hoskins without prior approval of this court.

D.E. 3-5, p. 2.  The Bankruptcy Court was to act as a gatekeeper to ensure that the litigation among the parties was terminated with respect to issues falling within the scope of the prior litigation and settlement.  This is a matter of the Bankruptcy Court properly enforcing its own judgment.

Compelling arbitration is a contract construction matter that was not before the Bankruptcy Court.  The Bankruptcy Court did not decide the issue of a contractual right to compel arbitration.  Instead, it recited, "The State Court is empowered to interpret the partys' [sic] agreements and releases, including without limitation, the arbitration requirements."  D.E. 3-37, p. 7.   Without a pending motion to compel arbitration, and without the Bankruptcy Court deciding to take jurisdiction to adjudicate the merits of Rex's remaining claims, this Court cannot say that the failure to compel arbitration was error or an abuse of discretion.

Hazel's cross-appeal issue is OVERRULED.

## CONCLUSION

For the reasons set out above, the Court consolidates Hazel's cross-appeal docketed in 14-cv-024 with this lead case.  Rex's Issues 1 and 2 are OVERRULED. Rex's Issue 3 is SUSTAINED and the Bankruptcy Court's order is MODIFIED to eliminate any suggestion that the Bankruptcy Court adjudicated any issue of contract interpretation regarding the Settlement Agreement and Mutual Release.  Hazel's cross-appeal issue is OVERRULED.   The Bankruptcy Court's order, as modified, is AFFIRMED.

ORDERED this 2nd day of June, 2014.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE